Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number

**Rebecca A. Caley, Bar No. 131997**
**CALEY & ASSOCIATES, A Professional Corporation**
**265 S. Randolph Avenue, Suite 270**
**Brea, California 92821-5777**
**714/529-1400 Telephone**
**714/529-1515 Facsimile**
☐ *Individual appearing without counsel*
☒ *Attorney for: Movant Financial Services Vehicle Trust / 9900-272*

FOR COURT USE ONLY

11/10/2003   \*\*FILED\*\*   15:05
**LA03-35712EC**
DEBTOR:
  FENN, SHERYL ANN
JUDGE: HON. E. Carroll - 586
TRUSTEE:
CHAPTER: 07 MOTION

------------------------------------------------

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIF. ID: 747
RECEIPT NO: LA-042726   $ 150.00

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

In re:

SHERYL ANN FENN, aka SHERILYN FENN and
R. TODD NEILSON, Chapter 7 Trustee,

                Debtor(s).

CHAPTER: 7

CASE NO.: LA03-35712 EC

DATE: December 2, 2003
TIME: 1:30 p.m.
CTRM: 1639
FLOOR: 16th

## NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### UNDER 11 U.S.C. § 362 (with supporting declarations)
### (MOVANT:  FINANCIAL SERVICES VEHICLE TRUST, by and through its servicer,
### BMW FINANCIAL SERVICES NA, LLC  )
**(Personal Property)**

1.   NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding Parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

2.   **Hearing Location:**   ☒ **255 East Temple Street, Los Angeles**   ☐ **411 West Fourth Street, Santa Ana**

                             ☐ **21041 Burbank Blvd., Woodland Hills**   ☐ **1415 State Street, Santa Barbara**

                             ☐ **3420 Twelfth Street, Riverside**

3.   a.   ☒   This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

     b.   ☐   This Motion is being heard on SHORTENED TIME. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence must be filed and served: ☐ at the hearing ☐ at least _____ court days before the hearing.

        (1)   ☐   An Application for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

        (2)   ☐   An Application for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court.

        (3)   ☐   An Application for Order Shortening Time has been filed and remains pending.

4.   You may contact the Bankruptcy Clerk's office to obtain a copy of an approved court form for use in preparing your response (*Optional Court Form 390*), or you may prepare your response using the format required by Local Bankruptcy Rule 1002-1.

5.   If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated:   November 6, 2003

Rebecca A. Caley
Print Name of Individual Movant or Attorney for Movant

CALEY & ASSOCIATES
*Print Law Firm Name (if applicable)*

Signature of Individual Movant or Attorney for Movant

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised January 2001*

**350PP**

Motion for Relief from Stay (Personal Property) - *Page 2 of ____*          **350PP**

| In re                (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| SHERYL ANN FENN,                Debtor(s). | CASE NO.: LA03-35712 EC |

## MOTION FOR RELIEF FROM STAY
## (MOVANT:  <u>FINANCIAL SERVICES VEHICLE TRUST, by and through its servicer,</u>
## <u>BMW FINANCIAL SERVICES NA, LLC</u> )

1.   **The Property:** Movant moves for relief from the automatic stay with respect to the following personal property (the "Property"):

☒   Vehicle *(describe year, manufacturer, type, and model):*   **2001   BMW   X5**

      Vehicle Identification Number:   **W B A F A 5 3 5 3 1 L M 6 3 3 6 9**
      Location of vehicle (if known):

☐   Equipment *(describe manufacturer, type, and characteristics):*
      *Serial number(s):*
      *Location (if known):*

☐   Other Personal Property *(describe type, identifying information, and location):*

2.   **Case History:**

a.   ☒  A voluntary   ☐  An involuntary petition      under Chapter   ☒7   ☐ 11   ☐ 12   ☐ 13  was filed on:   **10/01/03**

b.   ☐  An Order of Conversion to Chapter   ☐ 7   ☐ 11   ☐ 12   ☐ 13  was entered on:

c.   ☐  Plan was confirmed on *(specify date)*:

d.   ☐  Other bankruptcy cases affecting this Property have been pending within the past two years.

3.   **Grounds for Relief from Stay:**

a.   ☒   Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant  Movant the requested relief from stay as follows:

   (1) ☒   Movant's interest in the Property is not adequately protected.

     (a) ☒   Movant's interest in the collateral is not protected by an adequate equity cushion.

     (b) ☒   The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

     (c) ☒   No proof of insurance re Movant's collateral has been provided to Movant, despite borrower(s)'s obligation to insure the collateral under the terms of Movant's contract with Debtor(s).

     (d) ☐   Payments have not been made as required by an Adequate Protection Order previously granted in this case.

   (2) ☐   The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

     (a) ☐   Movant is the only creditor or one of very few creditors listed on the master mailing matrix.

     (b) ☐   The Property was transferred to Debtor(s) either just before the bankruptcy filing or since the filing.

     (c) ☐   Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.

     (d) ☐   Other bankruptcy cases have been filed asserting an interest in the same Property.

     (e) ☐   The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents.  No Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) has been filed.

   (3) ☐   *(Chapter 12 or 13 cases only)*  Post-confirmation plan payments have not been made.

*(Continued on Next Page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised January 2001*                                                                **350PP**

**2**

Motion for Relief from Stay (Personal Property) - *Page 3 of* ____          **350PP**

| In re                    (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| SHERYL ANN FENN,                    Debtor(s). | CASE NO.: LA03-35712 EC |

       (4) ☐ Post-confirmation payments required by the confirmed plan have not been made to Movant.

       (5) ☐ For other grounds for relief from stay, see attached continuation page.

3.  b.  ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

4.  ☐ Movant also seeks annulment of the stay to validate post-petition acts, as specified in the attached declaration(s).

5.  **Evidence in Support of Motion:**  *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

    a.  ☒ Movant submits the attached Declaration(s) on the Court's approved forms (if applicable) to provide evidence in support of the Stay Motion pursuant to Local Bankruptcy Rules.

    b.  ☐ Movant submits the attached supplemental Declaration(s) under penalty of perjury, to provide additional admissible evidence in support of the Stay Motion.

    c.  ☐ Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims and the Property set forth in Debtor(s)'s Schedules. Authenticated copies of the relevant portions of the Schedules are attached as Exhibit ____.

    d.  ☐ Other evidence *(specify):*

6.  ☐ **An optional Memorandum of Points and Authorities is attached to this Motion.**

WHEREFORE, Movant prays that this Court issue an Order granting the following:

1.  Relief from the stay to Movant (and its successors and assigns, if any) *(check boxes re all applicable relief requested):*

    a.  ☒ Terminating the stay.

    b.  ☐ Annulling the stay as to the acts set forth in the attached declaration(s).

    c.  ☐ Modifying or conditioning the stay as follows *(specify):*

2.  ☒ Allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to repossess and sell the Property.

3.  Additional provisions requested:

    a.  ☐ That the Order be binding and effective in any bankruptcy case commenced by or against the above-named Debtor(s) for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

    b.  ☒ That the 10-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived.

    c.  ☐ See Extraordinary Relief Attachment *(Attach Optional Court Form 350ER).*

    d.  ☐ For other relief requested, see attached continuation page.

4.  If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated:  November ___6___, 2003

                            Respectfully submitted,
                            FINANCIAL SERVICES VEHICLE TRUST, by and through its
                            servicer, BMW FINANCIAL SERVICES NA, LLC
                            *Movant Name*

                            CALEY & ASSOCIATES
                            *Firm Name of Attorney for Movant (if applicable)*

                            By: *[signature]*
                            *Signature*

                            Name:  Rebecca A. Caley
                                     *Typed Name of Individual Movant or Attorney for Movant*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Personal Property) - *Page 4 of* ____                    **350PP**

| | | |
|---|---|---|
| In re | (SHORT TITLE) | CHAPTER: 7 |
| SHERYL ANN FENN, | Debtor(s). | CASE NO.: LA03-35712 EC |

## PERSONAL PROPERTY DECLARATION
## (MOVANT:  FINANCIAL SERVICES VEHICLE TRUST, by and through its servicer, BMW FINANCIAL SERVICES NA, LLC )

I, _____ **SHAWNTEE  R.  JACKSON** _____ , declare as follows:
                *(Print Name of Declarant)*

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding Movant's interest in the Property because *(specify)*:

    ☐  I am the Movant and owner of the Property.

    ☐  I manage the Property as the authorized agent for the Movant.

    ☒  Other *(specify)*:  **I am a Bankruptcy Specialist employed by Movant and responsible for this account.**

2.  I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to loans, leases, or extensions of credit given to Debtor(s) concerning the Property.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3.  The personal property at issue in this Stay Motion (the "Property") is:

    ☒  Vehicle *(describe manufacturer, type, model, and year)*:    **2001    BMW    X5**

        *Vehicle Identification Number:*    **W B A F A 5 3 5 3 1 L M 6 3 3 6 9**
        *Location of vehicle (if known):*

    ☐  Equipment *(describe manufacturer, type, and characteristics)*:

        *Serial number(s):*
        *Location (if known):*

    ☐  Other Personal Property *(describe type, identifying information, and location)*:

4.  Debtor(s)  ☐  listed the Personal Property on Schedule B  ☒  did not list the Personal Property on Schedule B.

5.  The nature of Debtor's interest in the Property is:
    a.  ☐  Sole owner
    b.  ☐  Co-owner
    c.  ☒  Lessee
    d.  ☐  Other *(specify)*:

*(Continued on Next Page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised January 2001*                                                                                **350PP**

4

Motion for Relief from Stay (Personal Property) - *Page 5 of ____*    **350PP**

| In re                          (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| SHERYL ANN FENN,                    Debtor(s). | CASE NO.: LA03-35712 EC |

6.  Movant has a perfected security interest in the Property.

    a.  The Property is a motor vehicle, boat or other property for which a Title Certificate is provided for by state law. True and correct copies of the following items are attached to this Motion:

        (1) ☒  Certificate of Title *("Pink Slip")* attached as Exhibit ___"2"___

        (2) ☒  Vehicle or other Lease Agreement attached as Exhibit ___"1"___

        (3) ☐  Security Agreement attached as Exhibit _____

        (4) ☐  Other evidence of perfection attached as Exhibit _____

    b.  The Property is equipment, intangibles, or other personal property for which a Title Certificate is not provided for by state law. True and correct copies of the following items are attached:

        (1) ☐  Security Agreement attached as Exhibit _____

        (2) ☐  UCC-1 Financing Statement attached as Exhibit ____, as recorded on *(specify date)*:

        (3) ☐  UCC Financing Statement search results attached as Exhibit _____

        (4) ☐  Results of search of recorded or filed leases attached as Exhibit _____

        (5) ☐  Other evidence of perfection of a security interest attached as Exhibit _____

    c.  The Property is consumer goods. True and correct copies of the following items are attached:

        (1) ☐  Credit Application attached as Exhibit _____

        (2) ☐  Purchase Agreement attached as Exhibit _____

        (3) ☐  Account Statement showing payments made and balance due attached as Exhibit _____

        (4) ☐  Other evidence of perfection of a security interest *(if necessary under state law)* attached as Exhibit _____

    d.  ☐  Other liens against the Property are set forth on the attached continuation page.

7.  Status of Movant's debt:

    a.  A true and correct copy of the promissory note or other document that evidences the debt owed by Debtor(s) to Movant is attached as Exhibit ___"1"___.

    b.  Amount of current monthly payment: **$ 679.19**

    c.  Number of payments that have come due and were not made:  **Four.**    ( 2/21/03*, 5/21/03, 9/21/03, 10/21/03 )

    d.  Last payment received on___8/07/03___.                      ***Partial payment of $616.45 due for 2/21/03.**

8.  Amount of Movant's debt:

    a.  Principal: **(Lease Payoff Balance)**                          **$ 31,270.08**

    b.  Accrued Interest:                                          $

    c.  Costs (Attorney's Fees, Late Charges, Other Costs):          $

    d.  Advances (Property Taxes, Insurance):                        $

    e.  TOTAL CLAIM as of ___11/30/03___:                        **$ 31,270.08**

    f.  Future payments due by time of anticipated hearing date *(if applicable)*:
An additional payment of ___$ 679.19___ will come due on ___11/21/03___, and on the ___21st___ day of each month thereafter. If the payment is not received by the ___1st___ day of the following month, a late charge of ___$ 31.37___ would be due under the terms of the loan.

*(Continued on Next Page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Personal Property) - *Page 6 of* ____          **350PP**

| In re | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| SHERYL ANN FENN, | Debtor(s). | CASE NO.: LA03-35712 EC |

9. ☒ *(Chapter 7 and 11 cases only)* The fair market value of the Property is:  __$ 29,200.00 **wholesale**__ . This valuation is based upon the following supporting evidence:

   a. ☒ This is the value indicated for collateral of this year, make, model, and general features in the reference guide most commonly used source for valuation data used by Movant in the ordinary course of its business for determining the value of this type of collateral.  True and correct copies of the relevant excerpts of the most recent edition are attached as Exhibit __"3"__ .

   b. ☐ This is the value determined by an appraisal or other expert evaluation.  A true and correct copy of the expert's report or declarations attached as Exhibit _____.

   c. ☐ Other basis for valuation *(specify)*:

> **NOTE:**  *If valuation is contested, supplemental declarations providing additional foundation for the opinions of value should be submitted.*

   d. By subtracting the total amount of all liens from the value of the Property as set forth in Paragraph 9 above, I calculate that the Debtor's equity in the Property is __**NEGATIVE ( $ 2,070.08 )**__ (§ 362(d)(2)(A)).  **[ $ 29,200.00, less $ 31,270.08 ]**

   e. I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is ____-0-____ (§ 362(d)(1)).  **NOTWITHSTANDING THE DEBTOR'S NEGATIVE EQUITY IN THE VEHICLE, THE DEBTOR HAS NO OWNERSHIP INTEREST OR EQUITY BUILDING POTENTIAL IN THE VEHICLE PURSUANT TO THE TERMS OF THE CLOSED-END LEASE AGREEMENT.**

10. ☐ *(Chapter 12 or 13 cases only)* Chapter 12 or 13 case status information:

   a. 341(a) Meeting currently scheduled for the following date:
   Confirmation hearing currently scheduled for the following date:
   Plan confirmed at hearing on the following date *(if applicable)*:

   b. Post-petition payment history:

   (1) Post-petition payments due BUT REMAINING UNPAID since the filing of the case.

| | | | | |
|---|---|---|---|---|
| *(Number of)* _____ payment(s) due at $ _____ | each | = | $ _____ |
| *(Number of)* _____ payment(s) due at $ _____ | each | = | $ _____ |
| *(Number of)* _____ late charge(s) at  $ _____ | each | = | $ _____ |
| *(Number of)* _____ late charge(s) at  $ _____ | each | = | $ _____ |

   (2) Advances or other charges due but unpaid *(specify type and amount)*:  $ _____

        **TOTAL POST-PETITION DELINQUENCY:**          $ _____

   c. ☐ The debt is provided for in the Chapter 12 or 13 Plan.  Plan payments have been made to date as set forth in Exhibit _____.

   d. ☐ See attached Declaration(s) of Chapter 12 or 13 Trustee regarding the status of payments under the plan.  *(Attach Court Form 350.13).*

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on** __November__ , **2003,** at __Dublin, Ohio__ *(city, state).*

__SHAWNTEE R. JACKSON__                              **(See Signature On Following Page)**
*Print Declarant's Name*

                                                                *Signature of Declarant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised January 2001*          **350PP**

| Motion for Relief from Stay (Personal Property) - Page 6 of ____ | **350PP** |
|---|---|

| In re | CHAPTER: 7 |
|---|---|
| (SHORT TITLE) | |
| SHERYL ANN FENN, Debtor(s). | CASE NO.: LA03-35712 EC |

9. ☒ *(Chapter 7 and 11 cases only)* The fair market value of the Property is: $ **29,200.00 wholesale** . This valuation is based upon the following supporting evidence:

   a. ☒ This is the value indicated for collateral of this year, make, model, and general features in the reference guide most commonly used source for valuation data used by Movant in the ordinary course of its business for determining the value of this type of collateral. True and correct copies of the relevant excerpts of the most recent edition are attached as Exhibit "**3**".

   b. ☐ This is the value determined by an appraisal or other expert evaluation. A true and correct copy of the expert's report or declarations attached as Exhibit _____.

   c. ☐ Other basis for valuation *(specify):*

> *NOTE:* If valuation is contested, supplemental declarations providing additional foundation for the opinions of value should be submitted.

   d. By subtracting the total amount of all liens from the value of the Property as set forth in Paragraph 9 above, I calculate that the Debtor's equity in the Property is **NEGATIVE ( $ 2,070.08 )** (§ 362(d)(2)(A)). [ **$ 29,200.00**, less **$ 31,270.08** ]

   e. I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is **-0-** (§ 362(d)(1)). NOTWITHSTANDING THE DEBTOR'S NEGATIVE EQUITY IN THE VEHICLE, THE DEBTOR HAS NO OWNERSHIP INTEREST OR EQUITY BUILDING POTENTIAL IN THE VEHICLE PURSUANT TO THE TERMS OF THE CLOSED-END LEASE AGREEMENT.

10. ☐ *(Chapter 12 or 13 cases only)* Chapter 12 or 13 case status information:

   a. 341(a) Meeting currently scheduled for the following date:
      Confirmation hearing currently scheduled for the following date:
      Plan confirmed at hearing on the following date *(if applicable):*

   b. Post-petition payment history:

   (1) Post-petition payments due BUT REMAINING UNPAID since the filing of the case.
      (Number of) _____ payment(s) due at $_____ each = $ _____
      (Number of) _____ payment(s) due at $_____ each = $ _____
      (Number of) _____ late charge(s) at $_____ each = $ _____
      (Number of) _____ late charge(s) at $_____ each = $ _____

      (2) Advances or other charges due but unpaid *(specify type and amount):* $ _____

      **TOTAL POST-PETITION DELINQUENCY:** $ _____

   c. ☐ The debt is provided for in the Chapter 12 or 13 Plan. Plan payments have been made to date as set forth in Exhibit _____.

   d. ☐ See attached Declaration(s) of Chapter 12 or 13 Trustee regarding the status of payments under the plan. *(Attach Court Form 350.13)*.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on** ___November 5___, **2003**, at ___Dublin, Ohio___ *(city, state).*

__SHAWNTEE R. JACKSON__
*Print Declarant's Name*

_____
*Signature of Declarant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised January 2001*

**350PP**

# BMW Financial Services

Case 2:03-bk-35742-EC   Doc 28-1   Filed 11/10/03   Entered 11/12/03 00:00:00   Desc
Main Document   Page 8 of 16

**1. LESSOR NAME AND ADDRESS**
BMW Financial Services NA, LLC
5515 Park Center Circle Dublin OH 43017
Franklin

**2. LESSEE NAME(S) AND ADDRESS(ES)**
Sherilyn Fenn
16501 Ventura Blvd. Ste. 304 Encino CA 91436
Los Angeles

4-278015

**3. DATE OF LEASE** 7/21/02
**3A. END OF LEASE DATE (LEASE TERM)** 1/21/04 ( 18 months)

**4. AGREEMENT TO LEASE.** This Motor Vehicle Lease Agreement ("Lease") is entered into between the lessee(s) ("Lessee") and the lessor ("Lessor") named above. "You" and "your" refer to the Lessee(s). "We", "our" and "us" refers to the Lessor. "Vehicle" refers to the leased vehicle described below. You agree to lease the Vehicle from us according to the terms and conditions of this Lease. The consumer lease disclosures contained in this Lease are also made on behalf of Financial Services Vehicle Trust.

**5. VEHICLE DESCRIPTIONS**

**A. LEASED VEHICLE** ☐ New ☑Used ☐ Demo    **Primary Use:** ☑ Personal, Family or Household  ☐ Agricultural, Business or Commercial

| Year | Body Style | Make | Model |
|---|---|---|---|
| 2001 | N/A | BMW | X5 Series |

Odometer Reading 30035
Vehicle Identification No. WBAFB53531LH63369   License

**B. TRADE-IN VEHICLE**

| | Year | Make | Model |
|---|---|---|---|
| | N/A | N/A | N/A |

Vehicle Identification No. N/A

Trade-In Agreed Upon Value 0.00   Prior Credit/Lease Balance 0.00   Net Trade-In Value 0.00

This box is for use by Lessor (Center) and Lessee to memorialize trade-in, turn-in or other individualized agreements. If none, please indicate by entering "None" or "N/A". Financial Services Vehicle Trust is not obligated for any agreements memorialized below.

N/A

**6. AMOUNT DUE AT LEASE SIGNING OR DELIVERY** (Itemized in section 10 below)*
$ 1479.19

**7. MONTHLY PAYMENTS**
Your first Monthly Payment of $ 679.19 is due on 7/21/02
followed by 17 payments of $ 679.19 due on the 21 of each month. The total of your Monthly Payments is $ 12225.42

**8. OTHER CHARGES** (Not part of your Monthly Payment)
A. Disposition Fee (if you do not purchase the Vehicle at lease end) $ 350.00
B. N/A
C. N/A   N/A
Total $ 350.00

**9. TOTAL OF PAYMENTS** (The amount you will have paid by the end of the Lease)
$ 12575.42

**10. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY**

**A. AMOUNT DUE AT LEASE SIGNING OR DELIVERY**
California Tire Fee $
(1) Capitalized Cost Reduction $ 0.00
(2) First Monthly Payment $ 679.19
(3) Refundable Security Deposit $ 800.00
(4) Initial Title Fees $ 0.00
(5) Initial Registration Fees $ 0.00
(6) Initial License Fees $ 0.00
(7) Sales Tax on Capitalized Cost Reduction $ 0.00
(8) Document Preparation Fee $ 0.00
(9) N/A $ 0.00
TOTAL $ 1479.19

**B. HOW THE AMOUNT DUE AT LEASE SIGNING OR DELIVERY WILL BE PAID.**
(1) Net Trade-In Allowance $ 0.00
(2) Rebates and Noncash Credits $ 0.00
(3) Amount to be Paid in Cash $ 1479.19
TOTAL $ 1479.19

**11. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW**

A. Gross Capitalized Cost. The agreed upon value of the Vehicle ($ 35700.65 ) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance) ... $ 35940.65
B. Capitalized Cost Reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost ... $ 0.00
C. Adjusted Capitalized Cost. The amount used in calculating your Base Monthly Payment ... $ 35940.65
D. Residual Value. The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment ... $ 27862.50
E. Depreciation and any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term ... $ 8078.15
F. Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts ... + $ 3215.59
G. Total of Base Monthly Payments. The Depreciation and any Amortized Amounts plus the Rent Charge ... $ 11293.74
H. Lease Term. The number of payments in your Lease ... 18
I. Base Monthly Payment ... = $ 627.43
J. Monthly Sales/Use Tax ... + $ 51.76
K. N/A ... + $ N/A
L. N/A ... + $ N/A
Total Monthly Payment ... = $ 679.19

**Early Termination.** I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.

**12. Excessive Wear and Mileage.** You will be charged for excessive wear based on our standards for normal use. You will be charged for mileage in excess of the total miles over the Lease Term of 22500 miles, at the rate of 20 cents per mile (25 cents per mile on all 7 series)

**13. Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease Term for the Residual Value plus any official fees or taxes imposed in connection with this Lease and, or purchase.

Other Important Terms. See your Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**ITEMIZATION OF GROSS CAPITALIZED COST**

**ITEMIZATION OF GROSS CAPITALIZED COST:**
A. Agreed Upon Value of the Vehicle as Equipped at the Time of Lease Signing $ 35700.65
List Accessories Added After Lease Signing:
N/A + $ 0.00
N/A + $ 0.00
TOTAL, Agreed Upon Value of the Vehicle $ 35700.65
B. Initial Title, License and Registration Fees $ 0.00
C. Sales Tax $ 0.00

D. Luxury Tax $ 0.00
E. Document Preparation Fee $ 0.00
F. Lease Acquisition Fee $ 240.00
G. Maintenance Agreement $ N/A
H. Mechanical Breakdown Protection Agreement $ N/A
I. Outstanding Prior Credit or Lease Balance paid by Seller to: N/A $ 0.00
J. Other (specify) $ 0.00
K. Other (specify) N/A $ N/A
L. TOTAL Gross Capitalized Cost $ 35940.65

EXHIBIT "1"

8

| | | |
|---|---|---|
| B. Capitalized Cost Reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay | $ | 0.00 |
| C. (such as service contracts, insurance, and any outstanding prior credit or lease balance)... | $ | 35940.65 |
| D. Residual Value... | $ | 27888.50 |
| E. Depreciation and any Amortized Amounts. The amount charged for the vehicle's decline in value through normal use and for other items paid over the Lease Term... | $ | 8078.15 |
| F. Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts... | $ | 3215.59 |
| G. Total of Base Monthly Payments. The Depreciation and any Amortized Amounts plus the Rent Charge... | $ | 11293.74 |
| H. Lease Term. The number of payments in your Lease... | | |
| I. Base Monthly Payment... | $ | 651.43 |
| J. Monthly Sales/Use Tax... | $ | N/A |
| K. N/A | $ | N/A |
| L. N/A | $ | N/A |
| Total Monthly Payment... | $ | 679.99 |

**Early Termination. I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.**

**12. Excessive Wear and Mileage.** You will be charged for excessive wear based on our standards for normal use. You will be charged for mileage in excess of the total miles over the Lease Term of ___22500___ miles, at the rate of ___20___ cents per mile (25 cents per mile on all 7 series).

**13. Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease Term for the Residual Value plus any official fees or taxes imposed in connection with this Lease and, or purchase.

Other Important Terms. See your Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

### ITEMIZATION OF GROSS CAPITALIZED COST

ITEMIZATION OF GROSS CAPITALIZED COST:

| | | | | | |
|---|---|---|---|---|---|
| A. Agreed Upon Value of the Vehicle as Equipped at the Time of Lease Signing | $ | 35700.65 | D. Luxury Tax | $ | 0.00 |
| List Accessories Added After Lease Signing: | | | E. Document Preparation Fee | $ | 0.00 |
| N/A | + $ | 0.00 | F. Lease Acquisition Fee | $ | 240.00 |
| | | | G. Maintenance Agreement | $ | 0.00 |
| N/A | + $ | 0.00 | H. Mechanical Breakdown Protection Agreement | $ | N/A |
| | | | I. Outstanding Prior Credit or Lease Balance paid by Seller to: N/A | $ | 0.00 |
| | | | J. Other (specify) | $ | 0.00 |
| TOTAL Agreed Upon Value of the Vehicle | = $ | 35700.65 | K. Other (specify) N/A | $ | N/A |
| B. Initial Title, License and Registration Fees | $ | 0.00 | L. TOTAL Gross Capitalized Cost | $ | 35940.65 |
| C. Sales Tax | $ | 0.00 | | | |

**14. OFFICIAL FEES AND TAXES.** The total estimated amount you will pay for official and license fees, registration, title and taxes over the Lease Term, whether included in the Monthly Payment or otherwise assessed: $ _____

### 15. MAINTENANCE AGREEMENT

You are not required to buy a maintenance agreement to enter into this Lease. You may buy a maintenance agreement to cover certain maintenance and repairs of the Vehicle, unless the Vehicle is automatically covered under the BMW Maintenance Program. The term of the coverage will be governed by the conditions in your maintenance agreement. If you want to buy this coverage, you have reviewed the terms of the agreement which describe the maintenance and repairs. If a copy of the maintenance agreement is not given to you at the time you enter into this Lease, you should request a copy from your provider.
Maintenance Company Name: _____

You choose to buy a maintenance agreement for
☐ $ ___0.00___ and pay for it during your Lease Term as part of the Monthly Payment. The amount you pay will incur Rent Charge.
☐ You choose to buy a maintenance agreement and pay for it as part of the Amount Due at Lease Signing or Delivery (Section 10 above).
If the Vehicle is new or a demonstrator, it is covered by the manufacturer's standard new Vehicle warranty. The Vehicle is not covered by any other warranty unless identified below.

Lessee Initials_____   Co-Lessee Initials_____

### 16. MECHANICAL BREAKDOWN PROTECTION (MBP)

You are not required to buy a mechanical breakdown protection (MBP) to enter into this Lease. You may buy a MBP to cover certain major mechanical breakdowns of the Vehicle and some related expenses. The term of the coverage will be governed by the conditions in your MBP agreement. If you want to buy this coverage, you have reviewed the terms of the MBP agreement. If a copy of the MBP agreement is not given to you at the time you enter into this Lease, you should request a copy from your provider.

MBP Company Name: ____N/A____

☐ You choose to buy MBP for $ _____ and pay for it during your Lease Term as part of the Monthly Payment. The amount you pay will incur rent charge.
☐ You choose to buy MBP and pay for it as part of the Amount Due at Lease Signing or Delivery (Section 10 above).

Lessee Initials_____   Co-Lessee Initials_____

### 17. WARRANTIES

If the Vehicle is new or a demonstrator, the Vehicle is subject to the standard manufacturer's warranty. The Vehicle is not covered by any other warranty unless identified below:
☐ Remainder of the standard manufacturer's warranty if the Vehicle is not a new vehicle.
☐ Extended Warranty you have purchased from the manufacturer.
☐ _____

LESSOR MAKES NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESSED OR IMPLIED AS TO THE VEHICLE OR ANY OF ITS PARTS OR ACCESSORIES. LESSOR MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OR WARRANTY, UNLESS REQUIRED BY LAW. YOU ACKNOWLEDGE THAT YOU ARE LEASING THE VEHICLE FROM THE LESSOR "AS IS".

### 18. MILEAGE ALLOWANCE

____22500____ You agree this is the total mileage for your Lease Term.

☐ If this box is marked, you purchased extra mileage over the standard allowance of 15,000 miles per year.

Extra Mileage Refund at the Scheduled End of this Lease. If you purchased extra mileage, you may receive a refund of ___N/A___ per unused mile (20 cents per mile on all 7 Series) less any amount you owe under this Lease. You will not receive a refund if the Vehicle is destroyed or stolen, if you default or terminate this Lease early, if you exercise the purchase option or the refund is less than $1

Excess Mileage. At the scheduled end of this Lease you must pay Lessor 20 cents per mile (25 cents on all 7 Series) for each mile in excess of ___22500___

### NOTICES

NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.
NOTICE TO THE LESSEE: YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS AND UNTIL YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE.

THERE IS NO COOLING OFF PERIOD. California law does not provide for a "cooling-off" or other cancellation period for vehicle leases. Therefore, you cannot cancel this Lease simply because you change your mind, decide the Vehicle costs too much, or wish you had acquired a different vehicle. You may only cancel this Lease with the agreement of the Lessor or for legal cause, such as fraud.

Notice to the Lessee: (1) Do not sign this Lease before you read it or if it contains any blank spaces to be filled in; (2) you are entitled to a completely filled in copy of the Lease; (3) Warning — Unless a charge is included in this Lease for public liability or property damage insurance, payment for that coverage is not provided by this statement.

### INDIVIDUAL LESSEE SIGNATURE(S)

By signing this Lease, you acknowledge that you have read and received a completed copy of this Lease before signing it.

Lessee's Signature X _____   Lessee's Signature X _____

### BUSINESS LEASE SIGNATURE
☐ Corporation   ☐ Partnership   ☐ LLC or LLP   ☐ Sole Proprietorship

Lessee Business Name _____   Title, Signature of Authorized Representative X _____

### GUARANTY

I unconditionally guarantee the payment and performance by the Lessee of all promises contained in this Lease. Upon default, Lessor may proceed against me without first proceeding against the Lessee. My liability will be primary and will not be affected by any settlement, extension, renewal or modification of this Lease whether or not by operation of law. I waive all right to demands and presentments. I agree to pay all expenses (including attorneys' fees and legal expenses) incurred by Lessor if Lessor has to enforce this Guaranty. My obligation under this Guaranty shall be joint and several if there is more than one guarantor.

Guarantor's Signature X _____   Guarantor's Signature X _____

### LESSOR'S ACCEPTANCE AND ASSIGNMENT

The authorized signature of Lessor indicates Lessor has accepted the terms, conditions and obligation of this Lease. Lessor hereby assigns to Financial Services Vehicle

## ENDING YOUR LEASE

**8. PURCHASE OPTION.** You have an option to purchase the Vehicle as it stands, "as is," ... ... ... ... giving us 30 days advance written notice, and (b) you ... re not in default under ... ... ... ... ... after ... ... ... ... ... nar... ... the time you purchase the Vehicle. If you fail to do so, we eserve the right to cancel the registration.

**ND OF LEASE TERM.** If you purchase the Vehicle at the end of the Lease Term, you will pay us the Residual Value (Section 11.2) plus any official fees or axes or other charges to satisfy your obligations under this Lease added in connection with the purchase.

**PRIOR TO END OF LEASE TERM:** If you purchase the Vehicle prior to the end of the Lease Term, you will pay us (i) the actuarial payoff (Section 22); plus i) an early termination fee of $250.00, plus (iii) any unpaid Monthly Payment due; plus (iv) any official fees or taxes assessed or billed in the future, and ny other charges to satisfy your obligation under this Lease.

**20. RETURN OF VEHICLE AND END OF LEASE TERM LIABILITY.** If you do not purchase the Vehicle, you must return it to the place we specify with all arts and accessories and in good working order. Upon return, you must sign a Vehicle Condition Report and Federal Odometer Statement, which we may use n determining whether there is excess wear and use and, or excess mileage. Your End of Lease Term Liability is: (a) the Vehicle Turn-In Fee (Section 8.A); lus (b) any unpaid Monthly Payments due and any other amounts due under this Lease; plus (c) any excess mileage (Section 12, 18) and Excess Wear and Jse charges (Section 31); plus (d) any official fees or taxes assessed or billed in connection with this Lease. If you fail to return the Vehicle, you must continue to pay an additional Monthly Payment for each month until the time you return the Vehicle. Payment of this amount will not allow you to keep the Vehicle or automatically extend this Lease. This Monthly Payment may differ from your sched-led Monthly Payment under the original terms of this Lease.

**21. EARLY TERMINATION OF THE LEASE.** You may terminate this Lease at any time if you are not in default (Section 34). If you do not purchase the Vehicle, you must return it to the place we specify with all parts and accessories and in good working order. The Vehicle must have 5 serviceable tires with read of at least 1/8", all of the same grade and quality as those delivered with the Vehicle. Your Early Termination Liability is: (a) the Early Termination Cost Section 22); plus (b) if we terminated this Lease because you are in default, all collection costs, and to the extent permitted by law, court costs and easonable fees of attorneys who are not our salaried employees. You must pay us your Early Termination Liability when we bill you.

**22. EARLY TERMINATION COST.** For the purpose of figuring your Early Termination Liability (Section 21), the Early Termination Cost is: (a) any unpaid Monthly Payments due; plus (b) any official fees and taxes assessed or billed in connection with this Lease and any other charges to satisfy your obligation under this Lease, at termination; plus (c) an administration fee of $250.00; plus (d) the actuarial payoff, minus (e) the Estimated Value of the Vehicle (Section 3). Your actuarial payoff is the total of Base Monthly Payments remaining until the end of your Lease, plus the Residual Value, minus the unearned Rent Charges remaining until the end of your Lease. We compute Rent Charges based upon the actuarial method which means we earn our monthly Rent Charges during your Lease on a constant yield method based upon your declining Lease balance, assuming your Base Monthly payments have been received on heir scheduled due dates. We may use some or all of your security deposit to pay what you owe.

**23. ESTIMATED VALUE OF THE VEHICLE.** For the purpose of figuring the Estimated Value of the Vehicle (Section 22), the Estimated Value of the Vehicle is the alue in the average wholesale condition in the current Kelley Blue Book Auto Market Report (Kelley Blue Book) for your region. In the event Kelley Blue Book loes not quote such a value, the average wholesale condition of the Vehicle as published in the current N.A.D.A. Official Used Car Guide for your region will re used to determine the Estimated Value of the Vehicle. If you disagree with the Estimated Value of the Vehicle, you may obtain, at your own expense within 0 days from the date the Vehicle is returned to us, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale alue of the Vehicle which could be realized at sale, which will then be final and binding upon you and us.

**24. INSURANCE-EARLY TERMINATION.** If the Vehicle has been stolen or destroyed your Early Termination Liability is the amount of any proceeds of your otal loss insurance claim coverage maintained by you for the Vehicle plus any deductible amounts under the terms of the policy, unpaid Monthly Payments lue, any official fees and taxes assessed or billed in connection with this Lease and any other charges to satisfy your obligations under this Lease.

**25. REFUNDABLE SECURITY DEPOSIT.** We may use some or all of your refundable Security Deposit to pay what you owe under this Lease. The Security Deposit cannot be used to pay any Monthly Payment. You will not earn interest, increases or profits on your Security Deposit. We may commingle your Security Deposit with our general funds; any interest or monetary benefit to us will not be paid to you nor applied to what you owe under this Lease. After you have paid all your obligations to us under this Lease, we will refund to you any part of your Security Deposit that is not used to pay what you owe us.

## INSURANCE, MAINTENANCE & OPERATION

**26. VEHICLE INSURANCE.** You agree to provide the following types and amounts of primary insurance during the Lease Term: (a) Public Liability for bodily njury or death to any one person for not less than $100,000 and for any one occurrence for not less than $300,000; (b) Property Damage Liability for not less han $50,000; (c) Comprehensive Liability, including fire and theft, for the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum deductible of $1,000. Collision Liability for the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum reductible of $1,000. The policy(ies) must name us as an additional insured and loss payee. The policy must provide us with at least 30 day's advance iotice of cancellation. We have the right to endorse your name on any insurance check or settlement we receive. If you fail to give us proof of this insurance, ve may purchase it to protect our interest in the Vehicle. You may pay the cost of the insurance we purchase when we bill you. The cost of this insurance may se more than the cost of insurance you obtain. If you do not pay the cost of the insurance we purchase, we will add the amount to what you owe under this Lease, and the amount added will incur Rent Charge. The insurance we purchase may not cover your interest in the Vehicle. If you later give us proof of insurance, we will cancel the insurance we purchased. Any refunds of premium and Rent Charge will be used to reduce what you owe us under this Lease.

**27. TOTAL LOSS PROTECTION.** If the Vehicle is damaged, stolen or destroyed and considered a total loss under your insurance coverage, and you have naintained the Vehicle Insurance (Section 26) required by this Lease, we will waive the "gap amount" upon receipt of: (a) the proceeds of insurance coverage naintained by you for the Vehicle; (b) the deductible amount under your insurance coverage; (c) any unpaid Monthly Payments due; and (d) any official fees r taxes assessed or billed in connection with this Lease and, any other charges to satisfy your obligations under this Lease. The "gap amount" is the lifference between the actuarial payoff (Section 22) and the sum of sections (a), (b), (c) and (d) herein in the event of total loss.

**28. VEHICLE LOSS OR DAMAGE.** You must immediately notify us if the Vehicle is damaged or destroyed in an accident, stolen, abandoned, or taken by a police or other governmental agency. If the Vehicle is not considered a total loss we may terminate this Lease. Your liability will be any official fees or taxes issessed or billed in connection with this Lease, any other charges to satisfy your obligations under this Lease minus your insurance proceeds. If the Vehicle s stolen or destroyed, another vehicle may be substituted in its place only if you and we agree to the substitution. We have no obligation to provide a substitution vehicle. If the Vehicle is damaged and we do not terminate this Lease because the Vehicle is reasonably repairable, you must have the repairs made to our satisfaction at your expense.

**29. VEHICLE USE.** You promise that you will not (and you will not permit others to): (a) use the Vehicle for any illegal purpose; (b) drive the Vehicle without a alid driver's license; (c) garage the Vehicle outside the state where you reside when you sign this Lease for more than 30 days without our prior written permission; (d) take the Vehicle outside the United States, except for less than 30 days in Canada; (e) use the Vehicle to transport goods or persons for hire, or for lease or rental to others; (f) allow the vehicle to be encumbered or allow the placement of a lien; or g) allow a third party to operate the Vehicle for an extended period of time without written permission from us.

**30. VEHICLE OPERATION.** You are responsible for maintaining the Vehicle in good order and condition. You must pay all servicing expenses including gasoline, oil, tires, and expenses of maintenance and repair. You must have the Vehicle serviced in accordance with the manufacturer's recommendations You must not make any alterations that decrease the Vehicle's value or usefulness or that violate the law. If you add equipment to the Vehicle and it cannot be emoved or modified without decreasing the Vehicle's value or usefulness when the Vehicle is returned to us, the equipment will become our property. We nay inspect the Vehicle at any reasonable time. You will also keep complete maintenance booklets and return them with the Vehicle.

**31. EXCESS WEAR AND USE.** The following are applicable for determining excess wear and use. You must pay us the costs of all repairs to the Vehicle that are not the result of normal wear and use, whether or not the Vehicle is repaired. These costs include, but are not limited to: (a) repair of all mechanical defects, and any damage remaining after substandard repairs; (b) repair or replacement of all dented, scratched, chipped, rusted or mismatched body parts, paint, or vehicle identification items; (c) repair or replacement of dented, scratched, rusted, pitted, broken or missing trim and grill work; (d) repair or eplacement of broken or burned out lights, or scratched, cracked, pitted or broken glass; (e) replacement of any missing parts, accessories or adornments; f) repair of any damage that makes the Vehicle unlawful or unsafe to drive; (g) repair of all damage that would be covered by collision or comprehensive nsurance whether or not the insurance is actually in force.

## ADDITIONAL INFORMATION

**32. TAXES, REGISTRATION AND TITLING.** You must pay when due all registration, title, license, inspection fees and other official fees or taxes (other than our income taxes) in connection with the Vehicle. If a fee or tax incurred during the Lease Term is not assessed or billed until after the Lease Term, you must vay such fee or tax when we bill you. If you move to another location during the Lease Term you agree to pay us a $25 handling fee to process registration, title and license documents in addition to the actual official fees. If at any time during the Lease Term you live in a location that assesses personal property axes or vehicle excise taxes in connection with the Vehicle, you agree to pay us when we bill you, including any bill which may not be sent to you until after his Lease ends.

*10*

**28. VEHICLE LOSS OR DAMAGE.** You must attend... the Vehicle is destroyed, ... stolen ... sold, or taken by a public or other government agency, or the Vehicle is not considered a total loss we will pay for ... this Lease. You ... will be any actual fees or taxes assessed or billed in c... other ... other ... sh... or ... obligatio... ... er this Lease minus your insurance proceeds. If the Vehicle is stolen or destroyed, another vehicle may be substituted in its place only if you and we agree to the substitution. We have no obligation to provide a substitution vehicle. If the Vehicle is damaged and we do not terminate this Lease because the Vehicle is reasonably repairable, you must have the repairs made to our satisfaction at your expense.

**29. VEHICLE USE.** You promise that you will not (and you will not permit others to): (a) use the Vehicle for any illegal purpose, (b) drive the Vehicle without a valid driver's license; (c) garage the Vehicle outside the state where you reside when you sign this Lease for more than 30 days without our prior written permission; (d) take the Vehicle outside the United States, except for less than 30 days in Canada; (e) use the Vehicle to transport goods or persons for hire, or for lease or rental to others; (f) allow the vehicle to be encumbered or allow the placement of a lien; or (g) allow a third party to operate the Vehicle for an extended period of time without written permission from us.

**30. VEHICLE OPERATION.** You are responsible for maintaining the Vehicle in good order and condition. You must pay all servicing expenses including gasoline, oil, tires, and expenses of maintenance and repair. You must have the Vehicle serviced in accordance with the manufacturer's recommendations. You must not make any alterations that decrease the Vehicle's value or usefulness or that violate the law. If you add equipment to the Vehicle and it cannot be removed or modified without decreasing the Vehicle's value or usefulness when the Vehicle is returned to us, the equipment will become our property. We may inspect the Vehicle at any reasonable time. You will also keep complete maintenance booklets and return them with the Vehicle.

**31. EXCESS WEAR AND USE.** The following are applicable for determining excess wear and use. You must pay us the costs of all repairs to the Vehicle that are not the result of normal wear and use, whether or not the Vehicle is repaired. These costs include, but are not limited to: (a) repair of all mechanical defects, and any damage remaining after substandard repairs; (b) repair or replacement of all dented, scratched, chipped, rusted or mismatched body parts, paint, or vehicle identification items; (c) repair or replacement of dented, scratched, rusted, pitted, broken or missing trim and grill work; (d) repair or replacement of broken or burned out lights, or scratched, cracked, pitted or broken glass; (e) replacement of any missing parts, accessories or adornments; (f) repair of any damage that makes the Vehicle unlawful or unsafe to drive; (g) repair of all damage that would be covered by collision or comprehensive insurance whether or not the insurance is actually in force.

## ADDITIONAL INFORMATION

**32. TAXES, REGISTRATION AND TITLING.** You must pay when due all registration, title, license, inspection fees and other official fees or taxes (other than our income taxes) in connection with this Vehicle. If a fee or tax incurred during the Lease Term is not assessed or billed until after the Lease Term, you must pay such fee or tax when we bill you. If you move to another location during the Lease Term you agree to pay us a $25 handling fee to process registration, title and license documents in addition to the actual official fees. If at any time during the Lease Term you live in a location that assesses personal property taxes or vehicle excise taxes in connection with the Vehicle, you agree to pay us when we bill you, including any bill which may not be sent to you until after this Lease ends.

**33. LATE CHARGE; RETURNED CHECK CHARGE.** If we do not receive your total Monthly Payment within 10 days of its due date, you must pay a late charge of 5% of the amount of the payment that is late or $25, whichever is greater, or, to the extent of the applicable state law. If any check or payment item is returned to us unpaid for any reason, or if any electronic debit authorization is not paid, you must pay us a $15 service charge per item when we bill you.

**34. DEFAULT.** You will be in default under this Lease if: (a) you fail to pay any amount when due, or (b) you fail to keep any of your promises under this Lease, or (c) you or a guarantor becomes insolvent or die; or (d) if any information in your credit application or a guarantor's credit application is false or misleading. If you are in default, we may do any or all of the following: (i) take any reasonable measures to correct the default or save us from loss, and you must pay us our costs and expenses, or (ii) subject to your right to reinstate your Lease for failing to make a payment when it is due, terminate this Lease and your rights to possess and use the Vehicle, and if you do not return the Vehicle to us voluntarily, take possession of the Vehicle by any method permitted by law; (iii) determine your Early Termination Liability (Section 21) which you must pay when we bill you; or (iv) pursue any other remedy permitted by law. We may use some or all of your security deposit to pay what you owe. If we get back the Vehicle we may dispose of it by public or private sale. We will add to the amount you owe all reasonable and necessary costs, related expenses, fees, and legal costs including attorney's fees we incurred to repossess, store, restore, and/or dispose of the Vehicle.

**35. REIMBURSEMENT.** You must reimburse us for any amount of loss, liability or other expense including attorney's fees arising from the operation, condition, use or ownership of the Vehicle, including claims made under the strict liability legal doctrine. If you fail to pay any fine or parking ticket, we may pay such fine or ticket on your behalf. You must pay us the amount we pay plus a handling fee of $25 when we bill you.

**36. GENERAL.** (a) **You have no right to assign any of your rights under this Lease or in the Vehicle.** We may assign our interests under this Lease without your consent. (b) We may waive or delay enforcement of our rights under this Lease without affecting our rights on future defaults. (c) Any part of this Lease which is not enforceable shall not affect the validity of the remainder of this Lease. (d) We have relied upon the driver information in your credit application in entering this Lease and you represent that this information is correct. (e) **At the end of the Lease Term or when this Lease terminates, you must cooperate by completing a Federal Odometer Disclosure Statement.** If the Vehicle's odometer becomes inoperative or malfunctions, you must notify us, and have the odometer repaired within 30 days. (f) If more than one Lessee signs this Lease, each Lessee shall be jointly and severally liable for all obligations under this Lease. (g) Except as may otherwise be provided by law, this Lease will be subject to the laws of the state where you sign it. (h) This Lease describes all agreements between you and us with respect to the Lease of the Vehicle. (i) You may not change or stop any lease payments for any reason, even if you do not receive an invoice, and even if the Vehicle is stolen, destroyed, seized by the government or the court, experiences mechanical problems, or does not satisfactorily perform. (j) All prior agreements, whether oral or in writing, are superseded. (k) You represent that your driver's license and the driver's license of any authorized driver has not been revoked or suspended within the last 5 years. (l) Lessor shall not be responsible at any time for any personal property in the Vehicle. (m) Lessor owns the Vehicle. (n) I promise that I have given a true Amount Owed for any vehicle traded in. If the correct Prior Credit or Lease Balance is more than the amount shown in Section 4.B, I agree to pay you the excess amount upon demand.

> **You have the right to return the Vehicle, and receive a refund of any payments made if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.**

The printing contained in this box is not part of your lease agreement.
**LESSOR'S ASSIGNMENT**
For value received, Lessor warrants to BMW FS that: A. This agreement: (1) has been fully and accurately completed and executed by the Lessee(s) identified on the face of this agreement, (2) describes a valid deferred payment obligation entered into by a competent Lessee of legal age and is legally enforceable by BMW FS; (3) Lessor is not in default as of the time BMW FS becomes obligated to pay the purchase price for this agreement; B. Neither Lessor nor any of its employees has made any oral or written promise, affirmation, warranty, or representation to Lessee that is not contained in this agreement; C. Lessor does not know of any fact which indicates the uncollectability of this agreement; D. Prior to the delivery of the Vehicle, Lessee paid the amount due at lease signing set forth in this agreement, and that no part of said sum has been loaned to or otherwise provided directly or indirectly by Lessor; E. The Vehicle was delivered at Lessor's place of business and accepted by Lessee together with all accessories and options agreed to by Lessee; F. Lessor furnished BMW FS all credit information received from Lessee relative to this agreement and such information is true, complete, and accurate.
(See other side for Lessor's signature to the above.)

//

# STATE OF CALIFORNIA 4-188427

## CERTIFICATE OF TITLE

4-298015

53700080102

**AUTOMOBILE**

VEHICLE ID NUMBER
WBAFA53531LM63369

| YR MODEL | MAKE |
|---|---|
| 2001 | BMW |

PLATE NUMBER
4MMR639

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE |
|---|---|---|---|---|
| UT | | | G | 1 |

FEES PAID
$723

REGISTRATION EXPIRATION DATE
07/22/2001

| YR 1ST SOLD | CLASS | YR | MO |
|---|---|---|---|
| 2000 | NZ | | FV |

EQUIPMT. TRUST NUMBER

ISSUE DATE
08/11/00

MOTORCYCLE ENGINE NUMBER

ODOMETER DATE
07/21/2000
ACTUAL MILEAGE

ODOMETER READING
35 MI

REGISTERED OWNER(S)
FNCL SERV VEH TRUST LSR
FENN SHERILYN LSE
2029 CENTURY PARK E #750
LOS ANGELES CA 90067

- - - - -

I certify under penalty of perjury under the laws of the State of California, that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a. _____ DATE _____ X _____ SIGNATURE OF REGISTERED OWNER

1b. _____ DATE _____ X _____ SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads |__|__|__|,|__|__|__|,|__| (no tenths) miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked.

WARNING ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF AGENT SIGNING FOR A COMPANY | |

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

FNCL SVC VEH TRUST
5515 PARKCENTER CIR
DUBLIN
OH 43017

2. X
Signature releases interest in vehicle. (Company names must be countersigned)
Release Date _____

021335    CA49015756    REG 17 30 (REV 2 98)

**KEEP IN A SAFE PLACE — VOID IF ALTERED**

EXHIBIT "2"

12

APPLICATION FOR ... NEW ... (Please ... or type.)

Any change of registered owner or lienholder must be recorded with the Department of Motor Vehicles (DMV) within ten (10) days. The title, transfer fee and in most instances, use tax and a smog certificate must be presented to DMV to record the ownership change.

**NEW REGISTERED OWNER**

3a. TRUE FULL NAME OF NEW REGISTERED OWNER (LAST, FIRST, MIDDLE), AS IT APPEARS ON DRIVER'S LICENSE OR I.D. CARD

3b. ☐ AND   ☐ OR   (LAST AND/OR)

4. STREET ADDRESS OF P.O. BOX NUMBER

5. CITY                                                          STATE      ZIP CODE

6. MAILING ADDRESS STREET (IF DIFFERENT) DO NOT COMPLETE IF SAME AS RESIDENCE ABOVE

7. CITY                                                          STATE      ZIP CODE

8. FOR TRAILER COACHES ONLY: ADDRESS OF LOCATION (IF DIFFERENT)

I certify under penalty of perjury under the laws of the State of California that the information entered by me on this document is true and correct. If there is a mailing address entered on this form, it is a valid, existing and accurate address. I consent to receive service of process at this mailing address pursuant to Civil Procedures Code Sections 415.20(b), 415.30(a) and 418.90.

9a. DATE | SIGNATURE OF NEW REGISTERED OWNER | CALIFORNIA DRIVER LICENSE OR I.D. CARD NO. | PURCHASE DATE

X

9b. DATE | SIGNATURE OF NEW REGISTERED OWNER | CALIFORNIA DRIVER LICENSE OR I.D. CARD NO. | PURCHASE PRICE OR F.GIFT SO STATE

X

**LEASED VEH. ONLY** — 10. ADDRESS OF NEW LESSEE (IF DIFFERENT FROM LINE 4 ABOVE) WILL NOT BE PRINTED ON TITLE

**NEW LIENHOLDER** — 11. NAME OF LIENHOLDER - FOR NOT LIENHOLDER HOLDING SECURITY INTEREST IN VEHICLE / DMV USE ONLY - DO NOT ENTER NAME OF REGISTERED OWNER AS ABOVE. ELECTRONIC LIENHOLDER

ELT #

12. STREET ADDRESS OF P.O. BOX NUMBER                                STATE      ZIP CODE

## TITLE REASSIGNMENTS BY LICENSED CALIFORNIA DEALERS

FEDERAL LAW REQUIRES that you state the mileage upon transfer of ownership. Failure to complete or making a false statement may result in fines and/or imprisonment.

I certify under penalty of perjury under the laws of the State of California that the signature below releases my interest in this vehicle, acknowledges the odometer mileage recorded by the seller, and certifies that the odometer reading entered above my signature (in compliance with Federal law) and the other information contained herein on this document, are true and correct.

**DEALER TRANSACTIONS ONLY**

12. Odometer now reads | | (no tenths, miles) and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked. WARNING - Mileage ☐ is not the actual mileage ☐ exceeds the odometer mechanical limits | R/S NUMBER

DATE | SIGNATURE OF SELLER/AGENT | PRINTED NAME OF AGENT | DEALER NAME | DEALER NUMBER

X

DATE | SIGNATURE OF BUYER ACKNOWLEDGES ODOMETER READING | PRINTED NAME OF BUYER OR AGENT | SALES PERSON NO.

X

SOLD THROUGH AUCTION IF APPLICABLE

12. Odometer now reads | | (no tenths, miles) and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked. WARNING - Mileage ☐ is not the actual mileage ☐ exceeds the odometer mechanical limits | R/S NUMBER

DATE | SIGNATURE OF SELLER/AGENT | PRINTED NAME OF AGENT | DEALER NAME | DEALER NUMBER

X

DATE | SIGNATURE OF BUYER ACKNOWLEDGES ODOMETER READING | PRINTED NAME OF BUYER OR AGENT | SALES PERSON NO.

X

12. Odometer now reads | | (no tenths, miles) and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked. WARNING - Mileage ☐ is not the actual mileage ☐ exceeds the odometer mechanical limits | R/S NUMBER

DATE | SIGNATURE OF SELLER/AGENT | PRINTED NAME OF AGENT | DEALER NAME | DEALER NUMBER

X

DATE | SIGNATURE OF BUYER ACKNOWLEDGES ODOMETER READING | PRINTED NAME OF BUYER OR AGENT | SALES PERSON NO.

X

# Black Book

**NATIONAL AUTO RESEARCH**

## OFFICIAL USED CAR MARKET GUIDE MONTHLY

COMPLETE COVERAGE ON

DOMESTIC CARS
IMPORT CARS
4 WHEEL DRIVES
SUBURBANS
VANS
SPORT UTILITY VEHICLES
LIGHT DUTY VEHICLES

LOAN VALUE
VIN MODEL NUMBER
UNIVERSAL VEHICLE CODE
EXCESSIVE/LOW MILEAGE GUIDE
MANUFACTURER'S SUGGESTED RETAIL PRICE
CLEAN & AVERAGE WHOLESALE
CLEAN & AVERAGE RETAIL

OCTOBER 2003



## 2003 BMW X5   Manufacturer's Code: 100

MILEAGE CATEGORY: E
• ADD • 1100  SPT PKG-EXC 4.6i

[PRICES INC. AT AC]
• DEDUCT • 1300  W/O AT-4D SAV 3.0i
650  W/O MR - EXC 4.6i
1050  W/O LTHR-4D SAV 3.0i

| LOAN | UVC | VIN# | MSRP | DESCRIPTION | WHOLESALE CLEAN | WHOLESALE AVG. | RETAIL CLEAN | RETAIL AVG. |
|---|---|---|---|---|---|---|---|---|
| 39165 | 073 | FA535 | 39500 | 4D SAV 3.0i | 40900 | 38400 | 46125 | 42750 |
| 45390 | 074 | FB335 | 49950 | 4D SAV 4.4i | 47500 | 44500 | 53250 | 49750 |
| 57630 | 094 | FB935 | 66500 | 4D SAV 4.6i | 59800 | 56500 | 66725 | 62925 |

## 2002 BMW X5   Manufacturer's Code: 100

MILEAGE CATEGORY: E
• ADD • 1000  SPT PKG-EXC 4.6i

[PRICES INC. AT AC]
• DEDUCT • 1250  W/O AT-4D SAV 3.0i
600  W/O MR - EXC 4.6i
1000  W/O LTHR-4D SAV 3.0i

| LOAN | UVC | VIN# | MSRP | DESCRIPTION | WHOLESALE CLEAN | WHOLESALE AVG. | RETAIL CLEAN | RETAIL AVG. |
|---|---|---|---|---|---|---|---|---|
| 34170 | 073 | FA535 | 38900 | 4D SAV 3.0i | 36000 | 33500 | 40475 | 37500 |
| 39980 | 074 | FB335 | 49400 | 4D SAV 4.4i | 42400 | 39200 | 47750 | 43625 |
| 51610 | 094 | FB935 | 66200 | 4D SAV 4.6i | 54100 | 50600 | 60625 | 56575 |

## 2001 BMW X5   Manufacturer's Code: 100

MILEAGE CATEGORY: E
• ADD • 900  SPORT PACKAGE

[PRICES INC. AT AC]
• DEDUCT • 1200  W/O AT-4D SAV 3.0i
550  W/O MR
950  W/O MOONROOF

| LOAN | UVC | VIN# | MSRP | DESCRIPTION | WHOLESALE CLEAN | WHOLESALE AVG. | RETAIL CLEAN | RETAIL AVG. |
|---|---|---|---|---|---|---|---|---|
| 29780 | 073 | FA535 | 38900 | 4D SAV 3.0i | 32200 | 29200 | 36425 | 32900 |
| 35390 | 074 | FB335 | 49400 | 4D SAV 4.4i | 38200 | 34700 | 42825 | 38775 |

## 2000 BMW X5   Manufacturer's Code: 100

MILEAGE CATEGORY: E
• ADD • 700  SPORT PACKAGE

[PRICES INC. AT AC 8CYL]
• DEDUCT • 500  W/O MOONROOF

| LOAN | UVC | VIN# | MSRP | DESCRIPTION | WHOLESALE CLEAN | WHOLESALE AVG. | RETAIL CLEAN | RETAIL AVG. |
|---|---|---|---|---|---|---|---|---|
| 31310 | 070 | FB33* | 49400 | 4D SAV | 34000 | 31000 | 38325 | 34900 |

## 2002 DAEWOO LANOS   Manufacturer's Code: 210

MILEAGE CATEGORY: A
• ADD • 175  POWER PACKAGE-S

[PRICES INC. AT AC]
• DEDUCT • 975  W/O FACTORY AIR-S
500  W/O AUTO TRANS

| LOAN | UVC | VIN# | MSRP | DESCRIPTION | WHOLESALE CLEAN | WHOLESALE AVG. | RETAIL CLEAN | RETAIL AVG. |
|---|---|---|---|---|---|---|---|---|
| 2550 | 001 | TA226 | 9199 | 2D HATCHBACK S | 3400 | 2500 | 5150 | 3875 |
| 3160 | 017 | TB226 | 12999 | 2D HATCHBACK SPORT | 4000 | 3100 | 5875 | 4575 |
| 2905 | 002 | TA526 | 10099 | 4D SEDAN S | 3750 | 2850 | 5550 | 4225 |



EXHIBIT # 3

14

Motion for Relief from Stay (Personal Property) - *Page 7 of* ____    **350PP**

| In re                (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| SHERYL ANN FENN,                Debtor(s). | CASE NO.: LA03-35712 EC |

# PROOF OF SERVICE

STATE OF CALIFORNIA
COUNTY OF ORANGE

1.   I am over the age of 18 and not a party to the within action.  My business address is as follows:

     265 S. Randolph Avenue, Ste. 270
     Brea, CA  92821-5777

2.   Regular **Mail Service:  On November** ____7____**, 2003**, pursuant to Local Bankruptcy Rule 9013-1, I served the documents described as: NOTICE OF MOTION and MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (including supporting declarations) *on the interested parties at their last known address in this action by placing a true and correct copy thereof in a sealed envelope with postage thereon fully paid in the United States Mail at ____Brea____, California, addressed as set forth on the attached list.

> *Note: If the Notice and Motion have been served pursuant to an Order Shortening Time ("Order"), you must file a Proof of Service that indicates that the notice and service requirements contained in the Order have been met.*

3.   **See attached list for names and addresses of all parties and counsel that have been served.** *(In the manner set forth in Local Bankruptcy Rule 7004-1(2), specify capacity in which service is made; e.g., Debtor, Debtor's Attorney, Trustee, Trustee's Attorney, Creditors Committee or 20 largest unsecured creditors, etc.).*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:    November ___7___, 2003

____Wendy A. Gardea____
*Type Name*

*Signature*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised January 2001*                **350PP**

15

Motion for Relief from Stay (Personal Property) - *Page 8 of* ____          **350PP**

| In re | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| SHERYL ANN FENN, | Debtor(s). | CASE NO.: LA03-35712 EC |

## SERVICE LIST

DEBTOR
Sheryl Ann Fenn
16501 Ventura Blvd., Suite 304
Encino, CA   91436


DEBTOR'S ATTORNEY
J. Bennett Friedman, Esq.
Hamburg, Hanover, Edwards & Martin
1900 Avenue of the Stars, Suite 1800
Los Angeles, CA   90067-4409


CHAPTER 7 TRUSTEE
R. Todd Neilson, Trustee
Neilson, Elggren, LLP
10100 Santa Monica Blvd., Suite 410
Los Angeles, CA   90067


U.S. TRUSTEE
Office of the U.S. Trustee
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA   90017

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.